Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY DELAROSA, Individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>STATE STREET CORPORATION, JOSEPH L. HOOLEY, EDWARD J. RESCH, and MICHAEL W. BELL,<br><br>　　　Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anthony Delarosa ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings,

- 1 -

wire and press releases published by and regarding State Street Corporation ("State Street" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of State Street between February 27, 2012 and January 18, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and maintain offices in this district, and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff, as set forth in the accompanying Certification, purchased State Street securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant State Street, through its subsidiaries, provides a range of financial products and services to institutional investors worldwide. The Company is incorporated in Massachusetts and its principal executive offices are located at One Lincoln Street, Boston, Massachusetts. The Company also maintains offices at 1801 Century Park East, Suite 1440, Los Angeles, California 90067-2316. State Street's common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "STT."

8.     Defendant Joseph L. Hooley ("Hooley") has been the Chairman of State Street since January 1, 2011, and has been its Chief Executive Officer ("CEO") since March 1, 2010.

9.     Defendant Edward J. Resch ("Resch") served as Executive Vice President of State Street from 2002 until September 30, 2013. Defendant Resch served as Chief Financial Officer ("CFO") of State Street from 2002 to August 2013.

10.     Defendant Michael W. Bell ("Bell") has been the CFO of State Street since August 2013, and has been its Executive Vice President since 2013.

11.     Defendants Hooley, Resch and Bell are sometimes referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

- 3 -

Class Action Complaint for Violation of the Federal Securities Laws

(d)　　was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)　　was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)　　was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)　　approved or ratified these statements in violation of the federal securities laws.

13.　　The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.　　The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.　　The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Materially False and Misleading Statements**

16.　　On February 27, 2012, the Company filed a Form 10-K for the fiscal year ended December 31, 2011 (the "2011 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2011. The 2011 10-K was signed by Defendants Hooley and Resch. The 2011 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hooley and Resch attesting

to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

17.    On February 22, 2013, the Company filed a Form 10-K for the fiscal year ended December 31, 2012 (the "2012 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2012. The 2012 10-K was signed by Defendants Hooley and Resch. The 2012 10-K also contained signed SOX certifications by Defendants Hooley and Resch attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

18.    On February 21, 2014, the Company filed a Form 10-K for the fiscal year ended December 31, 2013 (the "2013 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2013. The 2013 10-K was signed by Defendants Hooley and Bell. The 2013 10-K also contained signed SOX certifications by Defendants Hooley and Bell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.    On February 20, 2015, the Company filed a Form 10-K for the fiscal year ended December 31, 2014 (the "2014 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2014. The 2014 10-K was signed by Defendants Hooley and Bell. The 2014 10-K also contained signed SOX certifications by Defendants Hooley and Bell attesting to the accuracy of financial reporting, the

Class Action Complaint for Violation of the Federal Securities Laws

disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20.   On February 19, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2015. The 2015 10-K was signed by Defendants Hooley and Bell. The 2015 10-K also contained signed SOX certifications by Defendants Hooley and Bell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21.   The statements referenced in ¶¶ 16 - 20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) State Street engaged in a scheme to defraud a number of its clients by secretly applying commissions to billions of dollars of securities trades; (2) State Street's billing practices relied on unsustainable methodologies; (3) over a 18-year period, approximately $240 million or more of expenses may have been incorrectly invoiced to State Street's asset servicing clients; (4) from June 2010 until September 2011, State Street charged clients "substantial" mark-ups without their consent; and (5) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

22.   On January 31, 2014, *Bloomberg* published an article entitled "State Street Fined $37.7 Million in U.K. for Hidden Fees," stating that "State Street Corp.'s U.K. unit was fined 22.9 million pounds ($37.7 million) by the Financial Conduct

- 6 -

Authority for charging clients 'substantial' mark-ups without their consent," stating in pertinent part:

### State Street Fined $37.7 Million in U.K. for Hidden Fees

*Suzi Ring and Christopher Condon*

January 31, 2014, 1:02 PM EST

State Street Corp.'s U.K. unit was fined 22.9 million pounds ($37.7 million) by the Financial Conduct Authority **for charging clients "substantial" mark-ups without their consent.**

State Street, the third-biggest custody bank, **"developed and executed a deliberate strategy" to charge undisclosed fees on top of agreed management or commission payments at a unit that helps institutions restructure their investments**, the FCA said in an e-mailed statement.

**"State Street U.K. allowed a culture to develop in the U.K. Transitions Management business which prioritized revenue generation over the interests of its customers,"** said Tracey McDermott, FCA director of enforcement and financial crime. "Their conduct has fallen far short of our expectations."

**From June 2010 until September 2011, Boston-based State Street deliberately overcharged six clients a total of $20.2 million**, the FCA said. Total revenue for the unit that overcharged clients during the same period was $77.9 million, meaning the extra money represented 26 percent of revenue. The firm received a 30 percent discount for settling early with the FCA, avoiding a larger fine of 32.7 million pounds.

State Street fell 1.4 percent to $67.27 at 12:24 p.m. in New York.

### 'Unacceptable Situation'

"Over the past several years, we have worked hard to enhance our controls to address this unacceptable situation," State Street said in

- 7 -

a statement on its website. "The FCA in its notice is critical of our business controls within the U.K. transition management business and our control functions in the U.K. at that time. We acknowledge these as historical problems and have undertaken extensive efforts to address both."

The FCA said it didn't find any evidence that executives outside State Street's Portfolio Solutions Group for Europe, Middle East and Africa had knowledge of the charges or of attempts to conceal them.

State Street said it "dismissed individuals centrally involved in the overcharging" in 2011. Alicia Curran Sweeney, a spokeswoman, declined to comment further on the former employees involved.

The hidden fees came on a service State Street provides to large customers such as asset managers and pension funds, helping them switch money between outside asset managers or when they restructure investments.

**In several instances, State Street executives quoted fixed fees to its clients, who were not identified in the FCA's statement, and then built in extra profit through undisclosed mark-ups on securities trades**, according to the FCA.

**Employee E-mails**

One customer made changes to $6 billion invested in bonds. After an initial transaction, **State Street's report to the client made no reference to mark-ups that amounted to $2,738,344**, the FCA said.

When the same client ordered another transaction, one State Street executive within the unit sent another an e-mail reading, "Back up the truck!," according to documents made available by the FCA.

Before the second transaction, managers also exchanged e-mail messages discussing whether State Street's lawyers had examined documents related to the deal.

"Did they [legal] look at the original agreement?" wrote one manager.

- 8 -

"Absolutely not. Nor did they look at the periodic notice. This can of worms stays closed!," the colleague wrote back, **adding that there is "no way" they could disclose the spread, or the profit taken for executing trades.**

**Cover Up**

The extra charges eventually came to light after a client hired a consultant who examined publicly available bond pricing and found undisclosed mark-ups.

Managers in the unit tried to cover up the charges by claiming they were "inadvertent" and rebated the company $1 million. They also told State Street's compliance officials the charges were erroneous.

**An internal investigation later revealed the charges were added deliberately and the firm notified regulators**. The company has audited the unit and added new policies for recording, approving and monitoring client charges within it.

"We have bolstered our control functions, governance and culture across all of our UK businesses," the company said in the statement. Custody banks keep records, track performance and lend securities for institutional investors including mutual funds, pension funds and hedge funds. State Street also manages investments for individuals and institutions.

[Emphasis added].

23.     On this news, shares of State Street fell $3.64 per share, or over 5.3%, over two trading days to close at $64.60 per share on February 3, 2014, damaging investors.

24.     On December 17, 2015, before market hours, State Street filed a Form 8-K with the SEC announcing "that it has incorrectly invoiced certain expenses to asset servicing clients", and that "[b]ased upon the Company's preliminary assessment,

- 9 -

over the 18-year period for which it has accessible records, approximately $200 million or more of expenses may have been incorrectly invoiced." The Company admitted regret and stated that it will "make any required improvements to its billing practices," stating in pertinent part:

> State Street Corporation announced today that it is informing clients about a review that it initiated into the manner in which it invoiced certain expenses to asset servicing clients. The review, which is not complete, addresses the amounts invoiced for specific categories of expenses. **Based on the results of the review to date, State Street believes that it has incorrectly invoiced certain expenses to asset servicing clients, primarily in the United States. State Street deeply regrets this matter.** At the conclusion of its review, State Street will compensate affected clients fully, including interest, and **make any required improvements to its billing practices.**

> **Based upon the Company's preliminary assessment, over the 18-year period for which it has accessible records, approximately $200 million or more of expenses may have been incorrectly invoiced.** During this 18-year period, State Street estimates that it has invoiced asset servicing clients a total of approximately $400 million for expenses falling within the categories being reviewed. Annual amounts invoiced for these expenses ranged from approximately $9 million in the early years to approximately $36 million in 2014. The actual amount to be reimbursed to clients will not be known until the review is completed, and that amount could differ materially from the Company's preliminary assessment. In fiscal year 2014, the categories of expenses under review represented approximately 0.7 percent of State Street's total asset servicing fee revenue of $5.1 billion.

> The Company will provide additional information on this matter in its scheduled fourth quarter 2015 earnings release and call on January 27, 2016.

> State Street is likely to reflect in its consolidated financial statements reported as of December 31, 2015 obligations in

Class Action Complaint for Violation of the Federal Securities Laws

connection with the above-described review. In addition, it has notified certain governmental authorities about its review. State Street may become subject to regulatory inquiries and litigation in connection with this matter, and there can be no assurance as to the outcome of any proceedings that may be commenced against it. The exposure associated with any proceedings that may be threatened, commenced or filed against State Street could have a material adverse effect on its consolidated results of operations for the period in which it establishes a reserve with respect to such potential liability or upon its reputation.

[Emphasis added].

25. On this news, shares of State Street fell $3.88 per share, or over 5.6%, over two trading days to close at $64.73 per share on December 18, 2015, damaging investors.

26. On January 27, 2016, before market hours, State Street issued a press release entitled "State Street Reports Fourth-Quarter 2015 GAAP-Basis EPS of $1.34 on Revenue of $2.5 Billion; Full-Year 2015 GAAP-Basis EPS of $4.47 on Revenue of $10.4 Billion" revealing that the Company incurred a "pre-tax charge of approximately $17 million" for "interest on the amounts to be reimbursed in connection with our previously disclosed review of amounts we invoiced clients for certain expenses during an 18-year period," and "the cumulative amount to be reimbursed over the review period, totaling approximately $240 million, has been reflected as a liability in our consolidated balance sheet," stating in pertinent part:

**State Street Reports Fourth-Quarter 2015 GAAP-Basis EPS of $1.34 on Revenue of $2.5 Billion; Full-Year 2015 GAAP-Basis EPS of $4.47 on Revenue of $10.4 Billion**

**Fourth-quarter 2015 operating-basis(a) EPS was $1.21, on revenue of $2.6 billion; Full-year 2015 operating-basis EPS was $4.89 on revenue of $10.6 billion**

Class Action Complaint for Violation of the Federal Securities Laws

Wednesday, January 27, 2016 7:00 am EST

**Dateline:**

BOSTON

**Public Company Information:**

NYSE:
STT
US8574771031

BOSTON--(BUSINESS WIRE)--In announcing today's financial results, Joseph L. Hooley, State Street's chairman and chief executive officer said, "Our performance in the fourth quarter reflects the continued challenges presented throughout 2015, including challenging global equity markets, particularly in emerging markets, persistent low interest rates, the strengthening U.S. dollar, and heightened regulatory expectations. We were successful at managing expenses in the quarter in light of the pressure on revenues. In addition, we grew fee revenue in 2015 and achieved strong new business results as evidenced by new asset servicing commitments of approximately $300 billion this quarter and a total of $800 billion in 2015."

\*      \*      \*

Fourth quarter of 2015 GAAP-basis results included the following notable items:

- $81.5 million pre-tax gain, or $49 million after-tax, related to the final payoff of a commercial real estate loan acquired as a result of the Lehman Brothers bankruptcy.

- **A pre-tax charge of approximately $17 million that reflects our intention to pay clients interest on the amounts to be reimbursed in connection with our previously disclosed review of amounts we invoiced clients for certain expenses during an 18-year period. In addition, the cumulative amount to be reimbursed over the review period, totaling approximately**

- 12 -

Class Action Complaint for Violation of the Federal Securities Laws

**$240 million, has been reflected as a liability in our consolidated balance sheet**, of which $223 million, or $145 million after-tax, relates to periods prior to the 2015 fiscal year and is reflected in the beginning retained earnings balance of our consolidated statement of shareholders' equity as of December 31, 2014. All prior period financial information within this news release and addendum has been revised to reflect the impact of the reimbursement on each prior period presented. See the addendum included with this news release for further information regarding the impact of the reimbursement on prior periods, including a reconciliation of the previously reported financial results to the revised financial results presented in this news release and addendum.

[Emphasis added].

27.    On this news, shares of State Street fell $4.02 per share, or over 7.1%, from its previous closing price to close at $51.91 per share on January 27, 2016, damaging investors.

28.    On April 5, 2016, *Reuters* published an article entitled "Ex-State Street executives charged in U.S. for defrauding clients" stating that "U.S. prosecutors announced charges on Tuesday against two former State Street Corp executives for scheming to defraud six clients, including Irish and British government pension funds, through secret commissions on billions of dollars of trades," stating in pertinent part:

CREDIT RSS | Tue Apr 5, 2016 | 12:16pm EDT

**Ex-State Street executives charged in U.S. for defrauding clients**

By Nate Raymond

**U.S. prosecutors announced charges on Tuesday against two former State Street Corp executives for scheming to defraud six clients, including Irish and British government pension funds, through secret commissions on billions of dollars of trades.**

Class Action Complaint for Violation of the Federal Securities Laws

Ross McLellan, a former State Street executive vice president, was arrested on charges including securities fraud and wire fraud contained in an indictment filed in federal court in Boston, where the custody bank is based.

The indictment also charged Edward Pennings, a former senior managing director at State Street who worked in the bank's London office.

McLellan, 44, was arrested in Hingham, Massachusetts, where he lives. Pennings, 45, is believed to be living overseas and was not arrested, prosecutors said.

\*    \*    \*

The case followed a 2014 settlement between State Street and the UK Financial Conduct Authority in which the bank paid a fine of £22.9 million (about $37.8 million) for charging the six clients "substantial mark-ups" on certain transitions.

State Street said in a statement that it has been cooperating with the U.S. investigation, and has "significantly strengthened" the controls and reporting mechanisms within the U.K. business unit at issue.

**According to the indictment, McLellan, Pennings and others conspired from 2010 to 2011 to add secret commissions to fixed income and equity trades performed for the six clients of a unit of the bank.**

That unit helps institutional clients move their investments between asset managers or liquidate large investment portfolios, prosecutors said.

"With each trade, they chipped away at the savings of thousands of retirees whose pensions they were charged with safeguarding," Boston U.S. Attorney Carmen Ortiz said in a statement.

Class Action Complaint for Violation of the Federal Securities Laws

> The commissions came on top of fees the clients agreed to pay and despite written instructions to the bank's traders that the clients should not be charged trading commissions, prosecutors said.
>
> The clients affected included Irish and British government pension funds and a Middle Eastern sovereign wealth fund, the indictment said. McLellan and Pennings took steps to hide the commissions, prosecutors said. They said the scheme was discovered after one client inquired in 2011 whether it had been overcharged.
>
> The case is U.S. v. McLellan, U.S. District Court, District of Massachusetts, no. 16-cr-10094.

[Emphasis added].

29.    On this news, shares of State Street fell $1.19 per share, or over 2%, from its previous closing price to close at $57.61 per share on April 5, 2016, damaging investors.

30.    On January 18, 2017, the U.S. Department of Justice announced that State Street entered into a deferred prosecution agreement and agreed to pay a $32.3 million criminal penalty to resolve charges that it engaged in a scheme to defraud a number of the bank's clients by secretly applying commissions to billions of dollars of securities trades. State Street also agreed to offer an equal amount as a civil penalty to the SEC, equaling an aggregate settlement of more than $64 million. State Street admitted the allegations and agreed to a deferred prosecution agreement that requires it to employ an independent corporate compliance monitor for three years.

31.    On this news, shares of State Street fell $1.46 per share, or over 1.8%, over two trading days to close at $78.74 per share on January 19, 2017, damaging investors.

32.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

Class Action Complaint for Violation of the Federal Securities Laws

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired State Street securities publicly traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, State Street securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

Class Action Complaint for Violation of the Federal Securities Laws

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of State Street securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

Class Action Complaint for Violation of the Federal Securities Laws

- • Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- • the omissions and misrepresentations were material;

- • State Street securities are traded in efficient markets;

- • the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- • the Company traded on the NYSE, and was covered by multiple analysts;

- • the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- • Plaintiff and members of the Class purchased and/or sold State Street securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of State Street securities during the Class Period.

46.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with

the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

47.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

48.     As a result of the foregoing, the market price of State Street securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of State Street securities during the Class Period in purchasing State Street securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

49.     Had Plaintiff and the other members of the Class been aware that the market price of State Street securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased State Street securities at the artificially inflated prices that they did, or at all.

50.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial

Class Action Complaint for Violation of the Federal Securities Laws

damages which they suffered in connection with their purchases of State Street securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of State Street securities.

56.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being

- 21 -

directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 27, 2017                     Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        By: /s/ Laurence M. Rosen
                                        Laurence M. Rosen, Esq. (SBN 219683)

Class Action Complaint for Violation of the Federal Securities Laws

355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws